

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Garrison, Jr., Director
Department of Public Safety
Camp Mabry
Austin, Texas

Dear Sir:

Opinion No. 0-3378
Re: Does H. B. 77, Acts of
the 47th Leg., setting
out the various speed
limits of motor vehicles
repeal Art. 791, Penal
Code of 1925, as amended.

Your request dated April 7, 1941, addressed to this
department, for an opinion, has been received and considered.

We quote from your request:

"House Bill 77, passed by the Forty-seventh
Legislature, in Section 1, sets out the various
speed limits of motor vehicles. Article 791 of
the Revised Criminal Statutes sets out exceptions
to the speed law for fire patrols, police patrols,
ambulances or physicians responding to emergency
calls.

"In your opinion, does House Bill 77, refer-
red to above, repeal Article 791 of the Revised
Criminal Statutes?"

House Bill No. 77, passed by the Acts of the 47th
Legislature, 1941, reads as follows:

"AN ACT to amend Section 8 of Chapter 282,
Acts of the Regular Session, Forty-
second Legislature, 1931; providing
a saving clause; repealing all laws
in conflict; and declaring an emer-
gency.

Honorable Homer Garrison, Jr., Director, Page 2

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE
OF TEXAS:

"Section 1. That Section 8 of Chapter 282
of the Acts of the Regular Session of the Forty-
second Legislature, 1931, be, and the same is
hereby amended so as to hereafter read as fol-
lows:

"Section 8. Rate and Speed of Vehicle.
It shall be unlawful for any person to operate
or drive any motor or other vehicle upon the
public highways of Texas at a rate of speed
in excess of sixty (60) miles an hour during
the daytime, or to drive or operate a motor
or other vehicle at a rate of speed in excess
of fifty-five (55) miles per hour during the
nighttime, or drive or operate a motor or other
vehicle within the corporate limits of an in-
corporated city or town, or within or through
any town or village not incorporated, at a
greater rate of speed than thirty (30) miles
per hour; provided, that it shall be unlawful
to drive or operate upon said public highways
a commercial motor vehicle, truck-tractor,
trailer, or semi-trailer as defined in this
Act, at a rate of speed in excess of forty-
five (45) miles per hour during the daytime,
or to drive or operate said commercial motor
vehicle, truck-tractor, trailer, or semi-
trailer at a rate of speed in excess of forty-
five (45) miles per hour during the nighttime,
or within the corporate limits of any incor-
porated city or town or within or through any
town or village not incorporated at a rate of
speed in excess of eighteen (18) miles per
hour. Provided further, that it shall be
unlawful to operate any motor vehicle engaged
in this State in the business of transporting
passengers for compensation or hire on any
highway, road, or thoroughfare not privately
owned between cities, towns, and villages at
a rate of speed in excess of fifty-five (55)
miles per hour.

"'Daytime as used in this Act shall mean
a half hour before sunrise to a half hour after

Honorable Homer Garrison, Jr., Director, Page 3

sunset, and nighttime shall mean at any other hour.

"'Provided further that no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing, having regard to the actual and potential hazards when approaching and crossing an intersection or a railway grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions; and speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"'The State Highway Commission shall have the power and authority upon the basis of an engineering and traffic investigation to determine and fix the maximum, reasonable and prudent speed at any road or highway intersections, railway grade crossings, curves, hills, or upon any other part of a highway, less than the maximum hereinbefore fixed by this Act, taking into consideration the width and condition of the pavement and other circumstances on such portion of said highway as well as the usual traffic thereon. That whenever the State Highway Commission shall determine and fix the rate of speed at any said point upon any highway at a less rate of speed than the maximum hereinbefore set forth in this Act and shall declare the maximum, reasonable and prudent speed limit thereat by proper order of the Commission entered on its minutes, such rate of speed shall become effecitve and operatáve at said point on said highways when appropriate signs giving notice thereof are erected under the order of the Commission at such intersection or portion of the highway.

"'That whenever the governing bodies of incorporated cities and towns in this State within their respective jurisdictions determine upon the basis of an engineering and traffic investigation that the maximum reasonable and prudent speed at any intersection or other portion of the highway, based upon the intersections, railway grade crossings, curves, hills, width and

Honorable Homer Garrison, Jr., Director, Page 4

condition of pavement and other conditions on such highway, and the usual traffic thereon, is greater or less than the speed limits hereinbefore set forth, said governing bodies shall have the power and authority to determine and declare the maximum reasonable and prudent speed limit thereat, which shall be effective at such intersection or other place.

"'It shall be unlawful for any person to so operate or drive any motor or other vehicle upon the public highways or streets of this State so as to wilfully obstruct or impede the normal, reasonable and safe movement of traffic. Police officers are hereby authorized to enforce the foregoing provision by directions to drivers; and a wilful disobedience to this provision shall be in violation of law punishable as provided in this Act.

"'Every charge of a violation of any speed regulation provided for in this Act, also the summons or notice to appear in answer to such charge, shall specify the rate of speed at which the person so charged is alleged to have driven, also the speed limit applicable within the district or at the location shall be set out.

"'The provisions of this Act declaring speed limits shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of any accident.'

"Sec. 2. If any part or parts of this Act shall be held to be unconstitutional, such unconstitutionality shall not affect the validity of the remaining parts of this Act. The Legislature hereby declares that it would have passed the remaining parts of this Act if it had known that such part or parts thereof would be declared unconstitutional.

"Sec. 3. That all laws or parts of laws in conflict with this Act are hereby repealed.

"Sec. 4. The importance of this Act for the benefit of public safety and the protection

of the traveling public upon the highways of this State creates an emergency and an imperative public necessity requiring the suspension of the Constitutional Rule requiring all bills to be read on three several days in each House be suspended, and the same is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

The above Act is an amendment of Section 8 of Article 827-a, Vernon's Penal Code of the State of Texas.

Article 791 of the Penal Code of the State of Texas, 1925, as amended, was passed as House Bill No. 260, Acts of the 43rd Legislature, 1933, Page 545, and its caption and the Act reads as follows:

"An Act amending Article 791 of the Penal Code providing that Section 8, of Article 827A, of the Acts of 1929, 41st Legislature, 2nd Called Session, page 72, Chapter 42, as amended by the Acts of 1931, 42nd Legislature, Regular Session, Page 507, Chapter 282, relating to the speed of motor vehicles, shall not apply to fire patrols or motor vehicles operated by the fire department of any city, town or village responding to calls, nor to police patrols or physicians and/or ambulances responding to emergency calls; and providing that incorporated cities and towns may by ordinance regulate the speed of ambulances, and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. Amend Article 791 of the Penal Code so as to hereafter read as follows:

"'Article 791. Section 8, of Article 827A, of the Acts of 1929, 41st Legislature, 2nd Called Session, Page 72, Chapter 42, as amended by the

Acts of 1931, 42nd Legislature, Regular Session, Page 507, Chapter 282, relating to the speed of motor vehicles, shall not apply to fire patrols or motor vehicles, shall not apply to fire patrols or motor vehicles operated by the fire department of any city, town or village responding to calls, nor to police patrols or physicians and/or ambulances responding to emergency calls; provided that incorporated cities and towns may by ordinance regulate the speed of ambulances.'

"Sec. 2. The fact that there is now no authorization in the Statutes authorizing the regulation by ordinance of the speed of ambulances in incorporated cities and towns, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read upon three several days in each House be suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

It will be noticed that the above Act was passed subsequent to the enactment of the original Act (1931) which House Bill No. 77, supra, amends.

In answering your question, we must determine whether or not House Bill No. 77, supra, has expressly or by necessary implication, repealed the provisions of Article 791, supra.

In the case of Gaddis v. Terrell, 101 Tex. 574, 110 S. W. 429, the Supreme Court had a similar set of facts before it for consideration. The court said:

"* * *. The question is, has the provision been repealed by subsequent statutes? * * *. The repealing section of the act last cited is as follows: 'All laws and parts of laws in conflict with the provisions of this Act are hereby repealed.' Laws 1905, p. 166, c. 103. It is clear that there is no express repeal; that is, the provision in question is not directly pointed out as expressly repealed. But since the effect of a general provision repealing conflicting laws evinces that the Legislature had in mind that something was to be repealed, the 'courts will be

less inclined against recognizing repugnancy
in applying such statutes, while, in dealing
with those of the other class, they will, as
principle and authority requires, be astute
to find some reasonable mode of reconciling
them with prior statutes so as to avoid a
repeal by implication.' Sutherland Stat.
Const. p. 199. But even with such a provision
repealing all conflicting laws, the courts must
find a repugnancy between the old provision and
the new before they can find that the latter
repeals the former." (Underscoring ours.)

See also Candoe v. Sewell, 172 S. W. 142 (Civ. App.).

Under the authority of the above cases, it is evident
that there is no express repeal of Article 791, supra, by the
provisions of House Bill No. 77.

The court, in the Candoe v. Sewell case, supra, (where
a section of one statute was amended thereby broadening its pow-
ers and where the amendatory act had a clause providing "that
all laws in conflict herewith be repealed"), said:

"The fact that the right of action was broad-
ened by the amendment will not incorporate a
meaning to article 4695 different from that there-
tofore established and given by the courts. We
do not think we are to look to section 2 of ar-
ticle 4694 for the meaning of article 4695, but
should give it the same meaning that it had when
used with reference to servants and agents under
section 1 before adding servants and agents to
section 2. Foster v. Champlin, 29 Tex. 22. We
think the case of Stoneage v. Southern, etc., 123
Tenn. 428, 131 S. W. 988, 31 L. R. A. (N. S.) 278,
is authority for the rule that a later statute or
amendment forming a part of a system or right is
to be considered with reference to the pre-exist-
ing body of that law, to which it is added and of
which it forms a part; and where there is no ex-
press purpose to amend or repeal the other ar-
ticles not named one should not be inferred un-
less they conflict with or are repugnant to the
later statute. Commonwealth v. Baxter, 235 Pa.
179, 84 Atl. 140, 42 L. R. A. (N.S.) 484, and
authorities there cited."

The question of repeal, whether express or implied, is one of legislative intent. First National Bank v. Lee County Cotton Oil Co., (Com. App.) 274 S. W. 127; Berry v. State, (Cr. App.) 156 S. W. 626.

In construing a repealing clause, the court will be governed by the ordinary rules of statutory interpretation. It will endeavor to ascertain and give effect to the legislative intent, and for this purpose it will depart when necessary from the literal meaning of words used. Thus where it is apparent that the Legislature did not so intend, even an express declaration that a particular statute is repealed will not be given effect. 39 Tex. Jur. 132, and cases cited.

We now consider whether the provisions of the prior Act, Article 791, Vernon's Penal Code of the State of Texas, is so inconsistent with and repugnant to the provision of House Bill No. 77 that they cannot stand together thereby resulting in a repeal of the former Act by necessary implication.

Repeal by implication is looked upon by the courts with disfavor. 39 Tex. Jur. 140.

Where there is no express repeal the presumption is that in enacting a new law the Legislature intended the old statute to remain in operation as was said in Cole v. State (Sup. Ct.) 170 S. W. 1036:

"Knowledge of the existing law relating to the same subject is likewise attributed to the Legislature in the enactment of a subsequent statute; and, when the later act is silent as to the older law, the presumption is that its continued operation was intended, unless they present a contradiction so positive that the purpose to repeal is manifest, * * * but the antagonism must be absolute—so pronounced that both cannot stand. Though they may seem to be repugnant, if it is possible to fairly reconcile them, such is the duty of the court. A construction will be sought which harmonizes them and leaves both in concurrent operation, rather than destroys one of them."

Implied repeal is a matter of legislative intent. 39 Tex. Jur. 138. It may be presumed, in construing a statute, that the Legislature knew or had in mind the existence of the general

Honorable Homer Garrison, Jr., Director, Page 9

laws in force at the time of the passage of an Act. Spence v. Fenchler, 107 Tex. 443, 180 S. W. 597; Cole v. State, 106 Tex. 472, 170 S. W. 1036.

With the above rules in mind a careful study of Article 791, supra, House Bill No. 77 does not show any inconsistency or repugnancy which would prevent either from being applied and enforced. We believe that Article 791 was meant to be an exception to the original provisions of Article 827a, Section 8. Undoubtedly the Legislature was prompted to enact Article 791 because the public interest demands that in an emergency or time of peril where lives or the preservation of property are at stake, the regulation of speed must yield to the urgency of the occasion.

In the case of Lilly v. State of West Virginia (C. O. A.), 29 Fed. 2nd 61, a city ordinance, without exceptions, regulating the speed of vehicles and a State law providing pedestrians should have the right of way at intersections, were held not to be applicable to a Federal officer who was pursuing a vehicle he thought was unlawfully transporting intoxicating liquor. The court said:

"The traffic ordinances of a city prescribing who shall have the right of way at crossings and fixing speed limits for vehicles are ordinarily binding upon officials of the federal government as upon all other citizens. * * * (citing cases). Such ordinances, however, are not to be construed as applying to public officials engaged in the performance of a public duty where speed and the right of way are a necessity. The ordinance of Huntington made no exemption in favor of firemen going to a fire or peace officers pursuing criminals, but it certainly could not have been intended that pedestrians at street intersections should have the right of way over such firemen or officers, or that firemen or officers under such circumstances should be limited to a speed of twenty five miles, or required to slow down at intersections so as to have their vehicles under control. Such a construction would render the ordinances void for unreasonableness insofar as they are applied to firemen or officers engaged in duties, in the performances of which speed is necessary; and we think they should be construed

784

as not applicable to such officers, either
state or federal, under such circumstances.
* * *. (Underscoring ours.)

We find nothing in House Bill No. 77 to indicate
that the Legislature had found any conditions existing that
would indicate that it should repeal or that it intended to
repeal the exceptions provided for in such emergencies.
The provisions of House Bill No. 77 seem to have been meant
to apply to all other persons in the manner therein provided
and is enforceable in all other instances except where the
exceptions of Article 791 are applicable.

An amendment will be construed and harmonized with
the Act it amends or to which it is added and of which it
forms a part. The court may look to the body of the amenda-
tory Act, its title and emergency clause, the existing facts
or conditions at the time of the amendment, and the body of
the Act amended. 39 Tex. Jur. 257, and cases cited.

For all of the reasons discussed, you are, there-
fore, respectfully advised, that it is our opinion that House
Bill No. 77, Acts of the 47th Legislature, 1941, has not repeal-
ed Article 791 of the Penal Code of the State of Texas, 1925,
as amended, and that the statute last named is in full force
and effect.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Harold McCracken

Harold McCracken
Assistant

APPROVED APR 18, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

HM:RS

